# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Steven M. Maus, | ) | |
|     Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 09-cv-628-PAC/JJK |
| Brian N. Toder, and Chestnut & Cambronne, P.A., | ) ) ) | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
|     Defendants. | ) ) | |

Before the Court is the Defendants' motion for a summary judgment. The Plaintiff resists the motion. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

This is an action for an accounting, usury, recision of an agreement to provide legal services, and breach of fiduciary duty. Between 2001 and 2005 the Chestnut & Cambronne law firm, where Defendant Brian Toder works as an attorney, represented the Plaintiff Steven Maus in a business partnership dissolution matter. See Maus v. Galic, 669 N.W.2d 38 (Minn. App. 2003). For more than three years the Defendants provided legal services to Maus based upon an oral agreement. A written fee agreement was signed on January 29, 2004. The written fee agreement does not appear in record before the court but there is no dispute that it did not mention interest or finance charges and did contain a clause which stated Maus owed the Defendants $44,871.29 for services provided. The monthly billings sent to Maus stated that "any amount not paid within 30 days shall accrue interest at the rate of 1 1/2% per month." The relationship soured sometime in 2005 in a dispute over fees. The last payment to the Defendants was made on December 17, 2004.

In December of 2005 Chestnut & Cambronne brought a motion to establish and enforce an attorney's lien on Maus's partnership-dissolution trust account. See Minn. Stat. § 481.13. In response, Maus alleged usury, violation of the Truth in Lending Act, and Rule 1.8 of the Minnesota Rules of Professional Conduct (fiduciary duty). On April 15, 2006, a Special Master granted Chestnut & Cambronne's motion for an attorney's lien without making any findings as to Maus's allegations. The lien amount is $81,778.93. The dissolution trust account is on deposit with the Hennepin County District Court. A Minnesota district court approved the Special Master's decision on April 19, 2006. Maus v. Galic, No. 99-5673 (Hennepin County Dist. Ct. April 19, 2006). The Special Master's order, which was approved by the district court, contained the following findings of fact:

1. "Maus" retained "C&C" in the fall of 2001 to serve him in the above lawsuit continuously until the end of February of 2005 when "Maus" fired "C&C" and rehired his attorney, John G. Westrick.

2. "Maus" never established that "C" ever agreed to cap its legal services at $50,000.00.

3. "Maus" and "C&C" executed a written fee agreement on January 29, 2004 entitled "agreement to provide legal Services". (Ex. A. Second Affidavit of Brian N. Toder).

4. "C&C" billed "Maus" for $94,043.93 remaining unpaid. "C&C" later reduced that amount to $81,778.93 by deducting $12,265.00, erroneously charged to him.

5. "Maus" failed to prove that "C&C" ever agreed to provide legal services on a contingent fee basis.

6. "Maus" failed to prove that "C&C" was not entitled to charge for services rendered in an attempt to obtain a fair accounting.

7. "Maus" failed to prove that "C&C" charged "Maus" for interest. In fact "C&C" merely added finance charges to "Maus" for delinquent invoices. "C&C" later waived all finance charges.

2

8. "C&C" has provided reasonable, fair and equitable legal services to "Maus" in the unpaid amount of $81,778.93

9. "C&C" has perfected it lien pursuant to Minn. Stat. Sec.481.13.

Id.

The lien against the partnership-dissolution trust account was to be payable at the time of the final distribution. In its counterclaim Chestnut & Cambronne states that it has not collected on the lien although demand has been made.

An appeal was taken and the lien affirmed. Maus v. Galic, No. A06-1183, (2007 WL 1248160)(Minn. Ct. App. May 1, 2007). In affirming the lien, the Minnesota Court of Appeals noted that "Maus is not barred from bringing a separate action for usury, Truth in Lending Act violations, or breach of fiduciary duty." Id. The Court explained that proceedings to establish an attorney's lien are summary in nature and the defenses raised by Maus were grounded in law rather than fact and thus inappropriate for resolution in a summary proceeding. Id. The current action was filed March 18, 2009.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect

the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). If the moving party has met this burden, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III. DISCUSSION

### A. Preclusion

The Defendants raise the closely related doctrines of res judicata, also known as claim preclusion, and collateral estoppel, also known as issue preclusion, as a bar to the Plaintiff's claims for an accounting, usury, and breach of fiduciary duty. The two doctrines collectively stand for the proposition that a "right, question or fact" that has been tested and decided by a "court of competent jurisdiction" cannot be disputed by the same parties in subsequent litigation. Kaiser v. Northern States Power Co., 353 N.W.2d 899, 902 (Minn. 1984).

In the Eighth Circuit, the application of claim and issue preclusion principles in a diversity action is a question of substantive law controlled by state common law. Lane v. Sullivan, 900 F.2d 1247, 1250 (8th Cir. 1990); Hillary v. Trans World Airlines, 123 F.3d 1041 (8th Cir. 1997). In this case Minnesota law will be applied.

Claim preclusion is a finality doctrine. Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004). The doctrine works as a bar to not only all claims actually litigated but to all claims that could have been litigated. Id. Claim preclusion "applies as an absolute bar to subsequent litigation when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." Id. All four prongs of this test must be met for the doctrine to apply. Id.

Issue preclusion is a narrower doctrine than claim preclusion. Hauschildt, 686 N.W.2d at 837. Issue preclusion applies where: (1) the issue was identical to the one in the prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or was in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. Id. In order for issue preclusion to apply the particular issue must have been "distinctly contested and directly determined" in the prior adjudication. Id. Collateral estoppel also applies in the context of attorney lien proceedings. Gaughan v. Gaughan, 450 N.W.2d 338, 343 (Minn. Ct. App. 1990); Boline v. Doty, 345 N.W.2d 285, 289 (Minn. Ct. App. 1984).[1] Once the lien amount has been fairly determined,

---

[1] The primary holding in Boline regarding the distinction between establishing and enforcing an attorney's lien has been overruled by statute but the case remains sound authority otherwise. See Paul v. Brown, No. A08-0515, 2009 WL 22288, at *4 n.2 (Minn. Ct. App. 2009); Thomas A. Foster & Assoc., LTD, v. Paulson, 699 N.W.2d 1 (Minn. Ct. App. 2005)(repeatedly citing case).

5

relitigation of the amount of the lien, and by implication the necessary factual findings, is precluded. Id.

The underlying proceedings did involve the same parties, the same set of factual circumstances and there was a final judgment on the merits. But, the underlying proceedings which established the Defendants' lien were summary in nature and did not permit Maus to fully raise the defenses of usury, violation of the federal Truth in Lending Act and breach of fiduciary duty. Indeed, in rejecting Maus's appeal the Minnesota Court of Appeals specifically held that he "is not barred from bringing a separate action for usury, Truth in Lending Act violations, or breach of fiduciary duty. Maus v. Galic, No. A06-1183, (2007 WL 1248160)(Minn. Ct. App. May 1, 2007). Thus, the doctrine of claim preclusion is inapplicable.

However, the doctrine of issue preclusion would seem to apply. The issues relating to the propriety and amount of the attorney lien were fully litigated. The Special Master conducted a full evidentiary hearing after which he made certain findings of fact before concluding a lien was proper. The district court approved the Special Master's order and the Minnesota Court of Appeals affirmed. Maus had a full and fair opportunity to participate and did fully participate in the proceedings. The amount of the lien and the Special Master's findings of fact were fully and fairly litigated and are entitled to full preclusive effect.

### B. Accounting

The Defendants argue the accounting claim is precluded by the underlying proceedings. Maus seeks "an accounting of all work claimed done for the Plaintiff, the rates at which they were billed, the manner in which interest accrued, and how payments made by the Plaintiff were

6

applied against that bill." See Complaint at ¶ 31. In the prayer for relief Maus asks the Court to release the lien which was established in the underlying proceedings.

The Special Master conducted a full evidentiary hearing regarding just these issues and made nine specific findings of fact before concluding Chestnut & Cambronne was entitled to a lien. The Special Master found Chestnut & Cambronne "has provided reasonable, fair and equitable legal services to Maus in the unpaid amount of $81,778.93." (Special Master's Finding No. 8.) In addition, the Special Master found no interest had been charged and all finance charges had been waived. (Special Master's Finding No. 7.) The only purpose in an accounting would be to try to show that the lien amount is incorrect and that interest had been charged.

Maus has had what amounts to an accounting in the hearing before the Special Master. The matter of lien has been fully litigated with an appeal taken to the Minnesota Court of Appeals with no attempt to bring the matter before the Minnesota Supreme Court. Maus fails to explain where this court would find authority to lift the lien. The accounting issue is precluded by the findings of the Special Master which were approved by the district court and affirmed by the Minnesota Court of Appeals. Maus will not be allowed to relitigate the issue.

C. **Usury**

The Defendants argue they are entitled to summary judgment because this action is untimely. They also argue they never actually collected any interest or finance charges on the debt and there was never a loan or forbearance of debt.

The usury claim is for violation of Minn. Stat. § 334.01. Usury is the taking or receiving of more interest or profit on a loan or forbearance than the law allows. Barton v. Moore, 558 N.W.2d 746, 750 (Minn. 1997). There can be no claim for usury in the absence of a loan or forbearance of money. Rathbun v. W. T. Grant Co., 219 N.W.2d 641, 647 (Minn. 1974). Forbearance is the "act by which a creditor waits for payment of debt due him by debtor after it becomes due." Id. at 648. The four elements that must be shown in order to prove a claim for usury are:

> (1) a loan of money or forbearance of debt;
> (2) an agreement between the parties that the principal shall be repayable absolutely;
> (3) the exaction of a greater amount of interest or profit than is allowed by law; and
> (4) the presence of an intention to evade the law at the inception of the transaction.

Trapp v. Hancuh, 530 N.W.2d 879, 885 (Minn. App. 1995).

Maus alleges he was charged 18% interest on past due billings from the Defendants. Minnesota's usury statue provides interest is payable at a maximum rate of 6% per year unless a written agreement exists, in which case interest at 8% per year may be charged. Minn. Stat. § 334.01. The agreement to provide legal services did not provide for the payment of interest or finance charges. The monthly billings stated a finance charge would be assessed at 1 1/2% per month, or 18% annually, if the bill was not paid within 30 days.

Minnesota law permits finance charges to be collected provided the agreement between the parties is an open ended credit plan or agreement which contemplates repeated transactions

and payment of no more than 1 1/2% interest per month if payment is not made in full. Minn. Stat. § 334.16; Peterson v. Gustafson, 584 N.W.2d 660, 662 (Minn. 1998). Maus has not brought an action for violation of § 334.16.

        **1.     Statute of Limitations**

The Defendants argue the claim for usury is barred by the two-year statute of limitations. The Defendants maintain that no interest was ever paid by Maus and that in any case the last payment he made was in December of 2004. This action was commenced in March of 2009.

Any action to recover usurious interest must be brought within two years of the last payment. Minn. Stat. § 334.02; Negaard v. Miller Const. Co., 396 N.W.2d 833, 836 (Minn. Ct. App. 1986). Negaard involved a contract to build a house with a provision that progress billings were due 30 days form the billing date with 12% interest on overdue amounts. Id. at 834-35. The client, Negaard, fell behind in the payments and several promissory notes were executed. Id. After the promissory notes came due and the construction company demanded payment, the client sued for design and construction defects. Id. The construction company counterclaimed for payment of the promissory note and the client raised usury as a defense. Id. The last payment on the debt was made on October 26, 1979, and the usury issue was first raised in 1982. Id. at 836. The claim for usury was found to be untimely as it was not brought within the two-year statutory period. In the present case any attempt to recover usurious interest would need to have been made within two years of the last payment which was made on December 17, 2004.

But this case is more than action to simply recover usurious interest. Maus also seeks to have the entire underlying debt declared void and forfeit. See Minn. Stat. §§ 334.03 & 334.05; Barton, 558 N.W.2d at 750. Under these provisions a borrower would no longer be liable for the

9

loan principal. Id. at 751. In the case of a usurious contract for the sale of goods, the goods may be retained. Fogie v. Thorn Americas, Inc., 190 F.3d 889, 900 (8th Cir. 1999). In some cases voiding the entire underlying debt has been deemed too harsh a penalty. Katz v. Lange, LTD., 356 N.W.2d 733, 735 (Minn. Ct. App. 1984); Rathbun, 219 N.W.2d at 653.

The two year limitations period on an action to recover usurious interest is set forth in the statute itself. Minn. Stat. § 334.02. The proper limitations period for action seeking the remedies available under §§ 334.03 and 334.05 is less clear. The general usury provision is of no help either. Minn. Stat. § 334.01. Two options present themself. The first option would be a six-year limitations period under Minn. Stat. § 541.05(2) for actions "upon a liability created by statute, other than those arising upon a penalty or forfeiture." The second option would be a two-year limitations period under Minn. Stat. § 541.07(2) for actions "upon a statute for a penalty or forfeiture." There can be no dispute that usury liability is a creature of statute. Thus the question to be decided is whether Minn. Stat. § 334.01 and the accompanying remedy provisions in §§ 334.03 and 334.05 are penal.

The unpublished opinion of the Minnesota Court of Appeals in Trapp v. Hancuh, No. C5-96-2406, 1997 WL 396234 (Minn. Ct. App. July 15, 1997), is instructive if not binding. Trapp involved the very same question presented here except that the Court was construing § 334.011 of the usury chapter rather than § 334.01. Section 334.011 applies to business and agricultural loans of less than $100,000. The penalty for violation § 334.011 is forfeiture of all interest due and recovery of an amount equal to twice the amount of interest actually paid. No limitations period is specified in § 334.011. The court in Trapp found this provision was "clearly penal in nature" because it authorized "recovery beyond actual losses." Trapp, 1997 WL 396234 at *3.

Usury laws are generally recognized as being penal in nature as they allow debtors to escape contractual obligations in some cases. United Realty Trust v. Prop. Dev. & Research Co., 269 N.W.2d 737, 743 (Minn. 1978); Widmark v. Northrup King Co., 530 N.W.2d 588, 590-91 (Minn. Ct. App. 1995).

In the present case the remedy would be to void the entire underlying debt including the line amount of $81,778.93 and disgorgement of all payments made by Maus which apparently total over $200,000. Doing so would certainly be penal in nature and far beyond the actual losses. The penal nature of the requested remedy is all the more evident when one considers that the Special Master found Maus was never charged any interest and any finance charges assessed were waived. The Court finds § 334.01 and the accompanying remedy provisions in §§ 334.03 and 334.05 are penal in nature. Thus the two-year limitations period set out in § 541.07(2) applies to bar the Maus's usury claim.

### 2. Loan or Forbearance

There can be no claim for usury in the absence of a loan or forbearance of money. Rathbun v. W. T. Grant Co., 219 N.W.2d 641, 647 (Minn. 1974). There can be no claim that the Defendants in this case loaned Maus money. They provided legal services for which Maus failed to pay. The failure to pay a bill in a timely fashion does not convert the provision of services into a loan of money. See Widmark, 530 N.W.2d at 591.

Forbearance is the "act by which a creditor waits for payment of debt due him by debtor after it becomes due." Rathbun, 223 N.W.2d at 648. In usury, the term forbearance signifies the contractual obligation of a creditor to refrain, during some period of time, from requiring the debtor to pay the debt when due. Rathbun, 223 N.W.2d at 648.

11

Widmark involved a farmer/dealer selling seeds for a seed company. See 530 N.W.2d at 590. The agreement between the dealer and seed company allowed the seed company to assess a late charge of 1.5% per month on late payments from the dealer to the seed company. Id. The relationship lasted for a number of years before it soured and the dealer sued the seed company alleging, among other things, usury. Id. It was undisputed that the dealer had been assessed and paid late charges at various times during the relationship. Id. In reviewing the grant of summary judgment to the seed company by the district court, the Minnesota Court of Appeals found the late charges were not usurious because there was no forbearance of a debt. Id. at 591. They explained that the seed company had never actually agreed to forego an immediate action on the seller if his account was overdue in exchange for a late charge and that unlike the typical credit arrangement, late payment was not encouraged. Id. And in fact the seed company had terminated the relationship in part because of the late payments. Id. Also cited was the common law rule that "a debtor by voluntary act cannot render usurious an otherwise valid transaction." Id. at 592.

In this case there was no agreement between the parties to the effect that the Defendants could not sue on the debt or seek a lien as they did. The Defendants were not contractually prohibited from demanding payment in full. The correspondence submitted by Maus demonstrates the Defendants were most anxious to be paid and were not encouraging late payments. (See Document No. 52-1). There has been no forbearance of a debt within the meaning of the usury statute.

### D. Breach of Fiduciary Duty

The allegations relating to the claim for breach of fiduciary duty can be found in paragraphs 44-57 of the Complaint. Central to the claim are four essential assertions of fact: (1) that the parties agreed, at least initially, that legal service would be provided on a contingency fee basis; (2) that the Defendants violated Minnesota Rule of Professional Responsibility 1.8(a)(3); (3) it was improper for the Defendants to seek a lien against the Plaintiff for unpaid legal services; and (4) the Defendants pressured the Plaintiff to sign an Agreement to Provide Legal Services.

Rule 1.8(a)(3) of the Minnesota Rules of Professional Conduct provides as follows:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:
>
> (3) the client gives informed consent, in a document signed by the client separate from the transaction documents, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Minn. R. Prof. Cond. 1.8(a)(3).

Maus has failed to explain what pecuniary interest the Defendants' acquired which was adverse to his. He may be attempting to argue that the $44,871.29 outstanding debt for services rendered referenced in the Agreement to Provide Legal Services, which was signed after representation had already begun, is an adverse pecuniary interest. But every attorney has an interest in being paid for his services and this certainly does not violate any rule of professional conduct. In any case, a violation of the Rules of Professional Conduct is not intended to provide a basis for civil liability. In re Proposed Petition to Recall Hatch, 628 N.W.2d 125, 127-28 (Minn. 2001).

> Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Nevertheless, because the rules do establish standards of conduct for lawyers, a lawyer's violation of a rule may be evidence of breach of the applicable standard of conduct.

Minn. R. Prof. Cond. Scope.

The court sees nothing improper in a legal services contract which references fees already incurred. Maus fails to provide any convincing support for his argument.

Maus has produced no evidence tending to show he was pressured into signing the Agreement to Provide Legal Services other than his own affidavit. The assertion is weakened by the fact that Maus fired the Defendants in 2005 and re-hired his former attorney who now represents Maus in this action. In addition, the work which the Defendants performed for Maus was in reference to a business partnership dissolution involving a multi-million dollar business. Maus was an experienced businessman and no stranger to litigation. See Maus v. Galic, No. 27-cv-99-005673, 2008 WL 5215651 (Minn Ct. App. Dec. 16, 2008); Maus v. Galic, 669 N.W.2d 38 (Minn. Ct. App. 2003). His claims of pressure are thin at best.

The Special Master found that no work was done on a contingency fee basis and this finding is due preclusive effect. (Special Master's Finding No. 5.) The Defendants were fully within their legal rights in seeking a lien for unpaid legal fees on sums awarded client in

litigation. Minn. Stat. § 481.13. Seeking such a lien, the propriety of which has already been established in the underlying proceedings, is not a breach of fiduciary duty.

Given the aforementioned, there appears to be little basis in fact or law for a breach of fiduciary duty claim. The invalidity of the first three assertions and the dubious nature of the fourth renders the claim wholly unsupportable. The Defendants are entitled to summary judgment.

### E. Regulation Z

Regulation Z, 12 C.F.R § 226, was promulgated by the Federal Reserve Board in order to implement the Truth in Lending Act which is contained in subchapter I of the Consumer Credit Protection Act. 15 U.S.C. § 1601 *et seq*. The Truth in Lending Act was enacted in order to ensure meaningful disclosure of credit terms so that consumers could more easily compare available credit and avoid the uninformed use of credit. 15 U.S.C. § 1601(a).

Maus claims the Defendants violated Regulation Z when they assessed him a finance charge without having made the required disclosures. Maus argues that the failure to make these disclosures permits him to rescind his agreement with the Defendants and voids any finance charges and the principal amount. There does not seem to be any dispute that no disclosures were made when the fee agreement was signed, although the agreement itself made no mention of interest or finance charges. The Defendants argue Regulation Z does not apply because the relationship between the parties was not a consumer credit transaction as defined by 12 C.F.R. § 226.2(a)(12), and transactions over $25,000 are exempt from Regulation Z. 12 C.F.R. § 226.3(b).

Certain transactions are exempt from the Truth in Lending Act. 15 U.S.C. § 1603; 12 C.F.R. § 226.3. Among the exempted transactions are extensions of credit primarily for a

business, commercial or agricultural purpose. 15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a)(1), and transactions which involve an extension of credit in excess of $25,000. 15 U.S.C. § 1603(3); 12 C.F.R. § 226.3(b).

### 1. Business or Commercial Purpose

The Truth in Lending Act and Regulation Z are intended to regulate consumer credit, which is defined as credit extended primarily for personal, family, or household purposes while exempting credit extended primarily for business, commercial or agricultural purposes. Compare 12 C.F.R. § 226.2(12)(defining consumer credit as being primarily for personal, family or household purposes); with 12 C.F.R. § 226.3(a)(1)(exempting business or commercial credit).

The Defendants argue they represented Maus in a business matter that is not covered by the Truth in Lending Act or Regulation Z. Maus argues the legal representation was for a personal purpose and not a business purpose because the Defendants represented him personally and not his business.

In classifying a transaction under the Truth in Lending Act a court should examine the transaction as a whole and the purpose for which the credit was extended. Riviere v. Banner Chevrolet, Inc, 184 F.3d 457, 462 (5th Cir. 1999); Nelson v. Farm Credit Services of North Dakota, PCA, 380 F.Supp.2d 1061, 1065 (D.N.D. 2005)(finding agricultural purpose). The substance of the transaction is more important than the form or the lender's motive and consequently the borrower's purpose should guide the analysis. Id.

It is true that the Defendants represented Maus personally and not his business. But the Defendants could not have represented the business as the business was being dissolved and the partners were each in need of separate counsel. The business, Galic Maus Ventures, was a

16

sophisticated commercial enterprise that developed several patented processes for making injection-molded plastics for optical lenses and compact discs. Maus v. Galic, No. 27-cv-99-005673, 2008 WL 5215651 (Minn Ct. App. Dec. 16, 2008). The business was sold 1998 for $4,500,000. Litigation between the two majority partners soon followed. It seems quite evident that Maus retained the services of the Defendants for a business purpose; that being the dissolution of a business partnership. Had the Defendants been hired to represent Maus in a divorce, a criminal matter or a dispute between residential property owners the result might be different. As it is, the business purpose exemption squarely applies.

## 2. Transaction in Excess of $25,000

The Defendants argue the exemption for transactions in excess of $25,000 not secured by real property or a dwelling applies. 15 U.S.C. § 1603(3); 12 C.F.R. § 226.3(b). The amounts involved in this case are far in excess of $25,000 and no security interest in real property is involved. Maus argues there was no way of knowing at the outset of the relationship that the indebtedness would exceed $25,000. In most cases the loan amount is easily discernable from the loan documents. See Mcbain v. Edgewater Bank, No. 4:06-cv-62, 2006 WL 3446485 (W.D. Mich. Nov. 27, 2006). But in this case we have law firm that sent its client monthly billings. It is unclear what would constitute a transaction in such a case. A day's work? A week's work? A monthly billing cycle? The total bill over the course of a four-year attorney-client relationship? The parties have not addressed the issue of what would constitute a transaction. Little relevant case law could be found. The lack of relevant case law points out the difficulty in applying a statute which was intended to regulate banks, credit card companies and other traditional lenders to a law firm who provides a service and a client who does not pay his bill.

The issue[2] will remain an open question the court need not resolve since it has determined that any extension of credit was for a business purpose.

### F. Counterclaim

For their counterclaim the Defendants note the underlying judgment from Hennepin County and the lien in the amount of $81,778.93. They ask for "judgment pursuant to the order and judgment of Hennepin County District Court File No. CT99-5673, dated April 27, 2006."

It seems the Defendants want the court to affirm the lien and underlying indebtedness. No motion is pending regarding the counterclaim. The judgment and the lien exist and are what they are. No pronouncement from this court could add or detract from that fact. As such the counterclaim fails to state a claim upon which relief could be granted and the court will dismiss it on its own motion.

---

[2] Other issues not raised cast doubt on the viability of a Truth in Lending Act/Regulation Z claim as well.

A good argument could be made that a law firm does is not a creditor as defined in the Truth in Lending act and Regulation Z. 12 C.F.R. § 226.2(a)(17); 15 U.S.C. § 1602(f); see Reithman v. Berry, 287 F.3d 274 (3rd Cir. 2002)(finding a law firm is not a creditor within the meaning of the Equal Credit Opportunity Act or the Truth in Lending Act); see also Am. Bar Assoc. v. Fed. Trade Comm'n, No. 09-1636, 2009 WL 4289505 (D.D.C. Dec. 1, 2009)(finding a law firm is not a creditor subject to Fair and Accurate Credit Transactions Act).

The action may be untimely. Truth in Lending Act litigation is governed by a general one-year limitations period. 15 U.S.C. § 1640(e); Wilson v. Prudential Ins. Co., 749 F.2d 502, 503 (8th Cir. 1984). The limitations period for purposes of rescission is three years. 15 U.S.C. § 1635(f); In re Laudani, 401 B.R. 9, 25 (Bankr. D. Mass. 2009). But the remedy of rescission is only applies to loans secured by the debtor's principal dwelling. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a); Wilson, 749 F.2d at 504. No security interest in the Plaintiff's residence was taken in this case.

## IV. CONCLUSION

Accordingly and for the reasons explained above, the Defendants' motion for summary judgment is **GRANTED**.  The counterclaim is **DISMISSED**.  Let Judgment be entered accordingly.

**IT IS SO ORDERED**.

Dated this 19th day of January, 2010.

/s/ *Patrick A. Conmy*
Patrick A. Conmy, Senior District Judge
United States District Court